IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ANTONIO FLETCHER,** | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION FILE NO. |
| | ) |
| v. | ) |
| | ) |
| **CITY OF FOREST PARK;** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

This action is being brought pursuant to Title VII of the Civil Rights Act and 42 U.S.C. § 1983. Mr. Antonio Fletcher, plaintiff in the above-referenced action, is a law enforcement officer, with nearly twenty years of experience, who was hired by the City of Forest Park, Georgia to serve as its Deputy Police Chief. However, after just a brief time in Forest Park, Mr. Fletcher observed several discriminatory and inequitable practices prevalent within the city's administration, especially those employed by the then-acting city manager. Upon raising his concerns, Mr. Fletcher found himself ostracized by the city's leadership — a division which ultimately lead to the termination of Mr. Fletcher's employment. Mr. Fletcher now brings this action for the retaliatory and discriminatory termination of his employment and the city's refusal to provide him a customary pay raise after his duties increased.

1

## JURISDICTIONAL STATEMENT

1. This Court has jurisdiction pursuant to 42 U.S.C. § 1331 and 1343 as Plaintiff's claims arise out of a question of federal law.

2. Venue in the Northern District is proper because all actions complained of occurred within the boundaries of this judicial district and all defendants reside within this district.

3. Plaintiff Antonio Fletcher (hereinafter "Mr. Fletcher") was employed as an administrator in the City of Forest Park's police department during all times relevant to this litigation. Mr. Fletcher is now a resident of Talladega, Alabama where he serves as the Chief of Police for Talladega College.

4. Defendant City of Forest Park (hereinafter "the City") is incorporated inside Clayton County, Georgia.

## FACTUAL BACKGROUND

5. Mr. Fletcher possesses nearly twenty years of experience in law enforcement, serving as the Administrative Captain at Albany State University for almost eighteen (18) years and as well as the Patrol Captain in Cordele, Georgia; Mr. Fletcher also holds two master's degrees, one in Public Safety Administration and the other in Human Services Counseling.

6. In or around December 2019, the City hired Mr. Fletcher to serve as the City's Deputy Police Chief.

7. On or about January 6, 2020, Mr. Nathaniel Clark (hereinafter "Mr. Clark"), the Chief of Police at that time, became the City's interim city manager.

8. Upon Mr. Clark's assuming the role of interim city manager, Mr. Fletcher began performing the duties of the City's Chief of Police and acted as the department's head.

9. Mr. Fletcher managed the department's personnel, including the implementation of the hiring, disciplining, and firing of employees, approved all budgetary expenditures and supplemental training requests, attended municipal meetings for department heads, and otherwise lead the department.

10. The duties referenced in Paragraph 9 are to be performed exclusively by the Chief of Police or at the Chief's delegation.

11. Mr. Fletcher performed the duties of the City's Chief of Police from January 6, 2020 through May 18, 2020.

12. The City traditionally provided an employee temporarily performing the tasks of a department head with the title of interim department head and a 10% pay increase to reflect the employee's increased work duties.

13. While Mr. Fletcher was performing the duties of the City's Chief of Police, the City promoted two other employees to serve as interim department heads – an interim fire chief, and an interim public works director.

14. Upon information and belief, the interim fire chief and interim public works director received the official amended title of "interim department head" and received a 10% pay increase.

15. Mr. Fletcher is an African American male, while the interim fire chief and interim public works director at the time were both Caucasians.

16. Shortly after absorbing the duties of Chief of Police, Mr. Fletcher discussed a pay increase with the city manager's office, requesting he also receive the traditional 10% pay raise and amended job title of "Interim Chief of Police".

17. The City did not respond to Mr. Fletcher's oral requests.

18. In the spring of 2020, Mr. Fletcher observed that City officials, namely Mr. Clark, appeared to show favoritism towards one of his officers, Sergeant Kelli Flanigan (hereinafter "Sgt. Flanigan").

19. Mr. Fletcher believed City officials, namely Mr. Clark, were not applying the same performance and disciplinary standards to Sgt. Flanigan as they were to other employees and raised these concerns to at least one City official.

20. On or about April 8, 2020, Mr. Fletcher submitted a Letter of Concern to the City's manager's officer concerning Sgt. Flanigan and requested the City perform an investigation into the City's treatment of Sgt. Flanigan.

21. Mr. Fletcher also engaged in an "informal counseling" session with Sgt. Flanigan, in which Mr. Fletcher sought to establish proper chain of command and "re-establish consistency and continuity" with Sgt. Flanigan and her co-workers.

22. The day after Mr. Fletcher submitted his Letter of Concern to Mr. Clark, Sgt. Flanigan asserted allegations of sexual harassment against Mr. Fletcher.

23. A representative of the City's Human Resources department investigated Sgt. Flanigan's allegations and found Mr. Fletcher had not subjected Sgt. Flanigan to sexual discrimination or a hostile work environment.

24. The City official investigating Sgt. Flanigan's claims also reported a "seemingly close relationship" between Sgt. Flanigan and Mr. Clark.

25. The City did not perform an investigation into Mr. Fletcher's claims that City officials showed favoritism or preferential treatment towards Sgt. Flanigan.

26. In the following months, Sgt. Flanigan was promoted to the position of Lieutenant and assigned to the Office of Professional Standards.

27. Sgt. Flanigan was promoted despite the fact her peers possessed greater experience and training.

28. Following the incident(s) with Sgt. Flanigan, Mr. Fletcher again petitioned the City to compensate him in a manner consistent with that of the other interim department heads.

29. On or about May 21, 2020, Mr. Fletcher submitted a letter to the Mr. Clark reprising his request for compensation for the duties performed as the City's Chief of Police. A true and correct copy of this letter is attached hereto as Exhibit "A".

30. In his letter, Mr. Fletcher specifically requested that he be given the 10% pay increase "that has been afforded other city employees in my same position."

31. On or about June 2, 2020, the then-acting city manager denied Mr. Fletcher's written request for a salary increase for the time he performed the duties of the City's Chief of Police.

32. The City did not provide Mr. Fletcher with any reasoning for its decision.

33. On or about June 3, 2020, Mr. Clark alleged Mr. Fletcher incorrectly performed an assigned task.

34. There is no evidence to support Mr. Clark's contention that Mr. Fletcher incorrectly performed the alleged assigned task.

35. Mr. Fletcher immediately issued a response to the Mr. Clark's allegation and attempted to clarify the record.

36. On or about June 4, 2020, Mr. Clark, acting on behalf of the City, terminated Mr. Fletcher's employment.

37. Mr. Clark never provided Mr. Fletcher with a reason for his decision to terminate Mr. Fletcher's employment.

38. No evidence exists that a member of the City's Human Resources department approved this decision.

39. There is no known disciplinary action against Mr. Fletcher during his nearly twenty years in law enforcement aside from Mr. Clark's lone allegation made just one day prior to Mr. Fletcher's termination.

40. The City's Human Resources department never reprimanded, warned, or even met with Mr. Fletcher regarding his job performance.

41. Following Mr. Fletcher's termination, the City's mayor, Ms. Angelyne Butler, wrote a letter of recommendation on Mr. Fletcher's behalf saying, "[She was] saddened at the departure of Mr. Fletcher … [but] would unequivocally support a decision to hire Mr. Fletcher[.]" A true and correct copy of Ms. Butler's letter of recommendation is attached hereto as Exhibit "B".

42. The only known reasons for the City to terminate Mr. Fletcher's employment are discriminatory or retaliatory.

43. Mr. Fletcher was unable to secure substantially similar employment until September 1, 2020 when he was hired to serve as the Chief of Police at Talladega College in Talladega, Alabama.

44. Mr. Fletcher's position with Talladega College was the first opportunity for Mr. Fletcher to secure substantially similar employment.

45. When employed by the City, Mr. Fletcher earned a salary of $92,000.00 per year, plus medical, dental, and vision insurance and one week of vacation — Mr. Fletcher's wife and son, who suffers from the pre-existing condition of lupus, were included on his insurance plans.

46. Mr. Fletcher now earns a salary of approximately $65,000.00 per year at Talladega College.

47. Mr. Fletcher incurred significant relocation costs in moving he and his family from Forest Park, Georgia to Talladega, Alabama.

48. Following the termination of his employment, Mr. Fletcher filed a charge with Equal Employment Opportunities Commission against the City.

49. On January 5, 2021, the United States Department of Justice issued Mr. Fletcher a Notice of Right to Sue Within 90 days. A true and correct copy of this letter is attached hereto as Exhibit "C".

50. Mr. Fletcher has satisfied any and all ante litem notice requirements pursuant to O.C.G.A. § 36-33-5.

51. Mr. Fletcher has exhausted all administrative remedies prior to filing this suit.

## COUNT I: RETAILIATORY TERMINATION OF EMPLOYMENT

52. Plaintiff hereby re-states and re-alleges Paragraphs 1 through 51 as if stated verbatim herein.

53. At all times relevant to this litigation, Mr. Fletcher was employed by a state actor.

54. Mr. Fletcher engaged in a statutorily protected activity by reporting concerns and instances of the City's unequal treatment of employees.

55. Mr. Fletcher suffered an adverse employment action when the City terminated his employment.

56. The City was actually aware of the fact Mr. Fletcher reported the City's unequal treatment of employment when it terminated Mr. Fletcher employment, and a causal relationship exists between Mr. Fletcher's engagement in the statutorily protected activity and suffering an adverse employment action.

57. As such, the City is liable to Mr. Fletcher for its retaliatory termination of Mr. Fletcher's employment in an amount to be determined at trial.

## COUNT II: RETAILIATORY TERMINATION OF EMPLOYMENT

58. Plaintiff hereby re-states and re-alleges Paragraphs 1 through 51 as if stated verbatim herein.

59. At all times relevant to this litigation, Mr. Fletcher was employed by a state actor.

60. Mr. Fletcher engaged in a statutorily protected activity by making multiple complaints to the City stating that he was not being compensated at the same rate at his similarly situated counterparts.

61. Mr. Fletcher suffered an adverse employment action when the City terminated his employment.

62. The City was actually aware of the fact that Mr. Fletcher complained he was receiving unequal compensation when it terminated Mr. Fletcher's employment, and a causal relationship exists between Mr. Fletcher's engagement in a statutorily protected activity and suffering an adverse employment action.

63. As such, the City is liable to Mr. Fletcher for its retaliatory termination of Mr. Fletcher's employment in an amount to be determined at trial.

**COUNT III: RETAILIATORY REFUSAL TO PROVIDE PAY INCREASE**

64. Plaintiff hereby re-states and re-alleges Paragraphs 1 through 51 as if stated verbatim herein.

65. At all times relevant to this litigation, Mr. Fletcher was employed by a state actor.

66. Mr. Fletcher engaged in statutorily protected activities when he made multiple complaints to the City stating that he was not being compensated at the same rate at his similarly situated counterparts and reported concerns and instances of the City's unequal treatment of employees.

67. Mr. Fletcher suffered an adverse employment action when the City refused to provide him a salary increase consistent with his similarly situated counterparts.

68. The City was actually aware of Mr. Fletcher's engagement in statutorily protected activities when it refused to provide Mr. Fletcher with a salary increase, and a causal relationship exists between Mr. Fletcher's engagement in statutorily protected activities and suffering an adverse employment action.

69. As such, the City is liable to Mr. Fletcher for its retaliatory refusal to provide a salary increase in an amount to be determined at trial.

## COUNT IV: DISCRIMINATORY REFUSAL TO PROVIDE PAY INCREASE

70. Plaintiff hereby re-states and re-alleges Paragraphs 1 through 51 as if stated verbatim herein.

71. Mr. Fletcher is a member of a protected class as he is an African American male.

72. Mr. Fletcher suffered an adverse employment action when the City refused to provide him a salary increase for performing the duties of an interim department head.

73. Mr. Fletcher is qualified to serve and perform the duties of the City's Chief of Police.

74. The City treated Mr. Fletcher's similarly situated Caucasian peers more favorably than Mr. Fletcher by providing them a raise and amended title while they served as interim department heads, but refusing to do the same for Mr. Fletcher.

75. As such, the City is liable to Mr. Fletcher for its discriminatory refusal to provide him a salary increase in an amount to be determined at trial.

WHEREFORE, Plaintiff now prays:

(a) His Complaint be allowed as filed;

(b) Service of process be had on Defendant as provided by law;

(c) That a jury trial be held as to all issues of fact;

(d) The Court enter judgment in favor of Plaintiff on all counts of Plaintiff's Complaint for damages in an amount to be determined at trial and any and all equitable relief as permitted by law;

(e) That all costs be assessed on Defendant;

(f) The Court grant any further relief this Court may deem equitable and proper under the circumstances.

SUBMITTED, this 12th day of January, 2021.

*/s/ Christopher K. Rhodes*
Christopher K. Rhodes
Georgia Bar No.: 565014
Rhodes Law, P.C.
P.O. Box 973
Dalton, GA 30722
Telephone: 706-980-0113
Facsimile: 706-935-5298
Email: rhodeslaw1@gmail.com

ATTORNEY FOR PLAINTIFF